UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HANCOCK,<br><br>  Plaintiff,<br><br>  v.<br><br>A. LEONG, et al.,<br><br>  Defendants. | Case No.: 1:13-cv-00325-SAB (PC)<br><br>ORDER DISMISSING CERTAIN DEFENDANTS FROM ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>[ECF No. 7] |

Plaintiff James Hancock is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c), Plaintiff consented to the jurisdiction of the United States Magistrate Judge on March 25, 2013. Local Rule 302.

On January 14, 2014, the Court screened Plaintiff's initial complaint and granted Plaintiff the option of either filing an amended complaint or willingness to proceed only on the claims found to be cognizable.

Now pending before the Court is Plaintiff's first amended complaint, filed February 18, 2014. (ECF No. 7.)

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

1 Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
2 "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks
3 monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

4       A complaint must contain "a short and plain statement of the claim showing that the pleader is
5 entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but
6 "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
7 do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly,
8 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally
9 participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County,
10 Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

11       Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings
12 liberally construed and to have any doubt resolved in their favor, but the pleading standard is now
13 higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive
14 screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow
15 the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal,
16 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer
17 possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely
18 consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556
19 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

22       On April 15, 2011, Plaintiff was confined and deprived of his liberty while in the custody of
23 North Kern State Prison (NKSP). At no time prior to this date did Plaintiff suffer from any back,
24 spine, or other injuries which would require medical designation, including permanent wheelchair
25 status.

26       On April 15, 2011, at approximately 1030 hours, Plaintiff strained or injured his back while
27 jogging on the prison's exercise yard. Plaintiff sought medical assistance from Registered Nurse (RN)
28 Sagisi who informed Plaintiff that would speak with the doctor to arrange a medical appointment at

the clinic to discuss possible treatments with the doctor. Plaintiff then returned to his cell to lie down as instructed by RN Sagisi.

On April 16, 2011, Plaintiff discovered that to even attempt to move caused him extreme pain in his back area, and any movement caused excruciating pain. At approximately 1000 hours, because of his pain, Plaintiff requested his cellmate to inform Licensed Vocational Nurse (LVN) Parker, who was dispensing medication in the housing unit, to inform Parker of his condition. Parker stated that "[n]o medication will be ordered for Inmate Hancock (Plaintiff), he will have to wait until his scheduled doctor's appointment on April 26, 2011."

On April 16, 2011, at approximately 1015 hours, Plaintiff spoke with correctional officer Jimenez regarding the extreme pain in his back and his inability to move. Jimenez informed Plaintiff that he would contact medical and apprise them of Plaintiff's medical condition.

On April 16, 2011, at approximately 1400 hours, while conducting a security check, correctional officer Oetting stopped at Plaintiff's cell and stated "[y]ou still haven't been seen by a doctor yet?" When Plaintiff responded in the negative, Oetting informed Plaintiff that she would contact the medical department to see what could be done. Shortly thereafter, Oetting returned and stated that the medical department told her Plaintiff's medical condition would not be treated as an emergency and Plaintiff would have to wait until his scheduled appointment on April 26, 2011.

On April 16, 2011, at approximately 1430 hours, because Plaintiff was in unbearable pain, Plaintiff's cellmate informed the housing unit correctional staff that Plaintiff was experiencing a "man down" situational emergency. Officer Oetting responded to the call and informed Plaintiff that the medical department had already been contacted and no further contact would be made.

On April 16, 2011, at approximately 1515 hours, because Oetting did not contact the medical department, Sergeant Gonzalez appeared at Plaintiff's cell and stated, "medical is refusing to respond to this request as an emergency. Officer Jimenez approached Sergeant Gonzalez and stated, "I just called medical again and they refuse to respond to this situational emergency." Sergeant Gonzalez then ordered Jimenez to log and date the medical department's refusal to respond.

On April 16, 2011, at approximately 1600 hours, officer Oetting was asked several times to contact the medical department. Shortly thereafter, Oetting informed Plaintiff that medical was still

1  refusing to respond to Plaintiff's treatment, he then stated, "I don't know what else to do, I've done
2  everything I can."
3        On April 16, 2011, at approximately 1830 hours, during the evening meal, Plaintiff's cell door
4  was opened to permit his cellmate to re-enter the cell.  As Plaintiff was in extreme pain, he attempted
5  to crawl out of his cell to obtain some kind of relief.  Plaintiff collapsed on the dayroom floor, in full
6  view of Oetting, who summoned two inmate porters and instructed them to place Plaintiff on a "stokes
7  litter" and then ordered them to move Plaintiff out of the housing unit through the emergency fire door
8  exit.  The inmate porters carried Plaintiff to the outside patio area, where they dropped the stokes litter
9  and Plaintiff fell approximately three feet to the ground.  While Plaintiff laid there in the stokes litter
10 on the concrete floor of the patio area, LVN Parker walked past him.  Although Parker made eye
11 contact with Plaintiff, Parker failed to take any action.  Sergeant Gonzalez, Jimenez, and Does one
12 through six, approached Plaintiff and Gonzalez ordered him to "get up," while he was holding pepper
13 spray in an offensive and threatening manner.  Sergeant Gonzalez informed Plaintiff that "medical will
14 not be responding."  Plaintiff explained to Gonzalez that he was in excruciating pain and could not
15 move.  After issuing several additional threats, including a rules violation, Gonzalez ordered Jimenez
16 and Does one through six to carry Plaintiff back to his cell.  The officer's dropped Plaintiff
17 approximately three feet the concrete floor while he was still in the stokes litter, causing further
18 extreme pain.  The officer's yelled for Plaintiff to "get up! Get in your cell! Quit faking it!"  Plaintiff
19 pleaded with the officers to summon medical aid.  The harassment continued for approximately ten
20 additional minutes, until medical staff RN Sagisi and G. Jeyaseelan arrived.  RN Sagisi began to
21 quarrel with Plaintiff accusing him of "faking it!"  It took approximately fifteen minutes for Plaintiff
22 to be taken to the medical clinic for a mild shot for the pain.

### III.

### DISCUSSION

**A.    Deliberate Indifference to Serious Medical Need**

26 While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical
27 care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to
28 an inmate's serious medical needs.  <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012); <u>Wilhelm v.</u>

4

Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

1. Defendants Sagisi, Parker, Gonzalez, Oetting, Jimenez, Barnhart, and Does One through Six

Viewing Plaintiff's allegations liberally, as this Court must, Plaintiff states a cognizable claim for deliberate indifference against Defendants M. Sagisi, B. Parker, E.R. Gonzalez, Oetting, Jimenez, and Does One through Six.

2. Defendants DeLong and Patton

Plaintiff fails to state a cognizable claim against Defendant DeLong, Barnhart, and Patton.

As to Defendant Doctor DeLong, Plaintiff submits that Dr. Leong evaluated Plaintiff, provided him with a walker, medication, and ordered x-rays, and found that Plaintiff's back was within the normal range. These allegations fail to demonstrate deliberate indifference.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

5

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1977); Snow v. McDaniel, 681 F.3d at 987-88; Wilhelm v. Rotman, 680 F.3d at 1122). Even assuming Dr. Leong erred in some way, a finding which is not supported by the complaint, an Eighth Amendment claim may not be premised on even gross negligence by a physician. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

As to Defendant Patton, Plaintiff's allegations are insufficient factually to give rise to a constitutional violation. Plaintiff alleges only that Patton ordered inmates to move Plaintiff to the patio area which resulted in further injury. These allegations fail to demonstrate how officer Patton knew of and disregarded an excessive risk to Plaintiff's health and safety. Without further factual information regarding Patton's subjective intents, Plaintiff fails to state a cognizable claim for relief. Although the Court previously found that Plaintiff's original complaint stated a cognizable against Patton, the amended complaint lacks sufficient factual allegations to state a cognizable claim. The Court's January 14, 2014, screening order specifically advised Plaintiff that "an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint." (ECF No. 6, Order at 7:26-28, 8:1-5.)

In light of the fact that the Court previously notified Plaintiff of the deficiencies and granted leave to amend, further amendment is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-1449 (9th Cir. 1987).

///
///
///
///

## IV.

## CONCLUSION AND ORDER

Based on the foregoing,

IT IS HEREBY ORDERED that:

1.      This action shall proceed against Defendants Sagisi, Parker, Gonzalez, Oetting, Jimenez, Barnhart, and Does One through Six for deliberate indifference to a serious medical need; and

2.      Defendants DeLong and Patton are DISMISSED from the action for failure to state a cognizable claim.

IT IS SO ORDERED.

Dated:   **April 9, 2014**

UNITED STATES MAGISTRATE JUDGE